## Callender & Wife, Appellants, *v.* McCreary & Wife.

The advancement required by the statute of distributions, to be brought into *hotch-pot*, must have been received from the intestate himself.

APPEAL from the probate court of the county of Claiborne.

This is an appeal from a judgment of the probate court of the county of Claiborne. It appears by the record that in the year 1839, the appellants applied to the court below for an order of distribution of the slaves belonging to the estate of the late Drury W. Brazeale, deceased. That appellants and appellees are. the legal distributees of said estate. Commissioners were accordingly appointed by the court to make the distribution asked for, who made their report of the manner in which they had divided the slaves subject to distribution amongst the several heirs of Dr. W. Brazeale. It appears from the report of the commissioners that Mrs. McCreary had received from the intestate, a negro man named George, by way of advancement, which negro they brought into the *hotch-pot* in pursuance of the statute, and valued him at $200, and then divided to her an equal portion of the estate. It also appears from the evidence in the record, that Mrs. McCreary had received several other negroes, which were the property of Mrs. Brazeale, before her marriage with the deceased, and which were settled upon Mrs. McCreary by an ante-nuptial contract between Mrs. Brazeale and Drury W. Brazeale—the slaves in question to vest in her upon the death of said Drury. It was insisted that these slaves should also have been brought into *hotch-pot*, and on that ground exception was taken by the appellants to the report. The court below overruled the exception, and confirmed the report. The errors assigned are the refusal of the court on this state of the facts to sustain the exceptions to the report of the commissioners.

Thrasher for appellants,

Three errors are assigned.　The sum and substance of all, however, may be properly considered under the third, to wit: that the court erred in decreeing a share of the personal estate of D. W. Brazeale, deceased, to Selina McCreary and her husband, without requiring them to bring into hotchpot the property secured to the said Selina as an advancement, by the marriage contract between her father, D. W. Brazeale, in his life time, and Mary Bane, a second wife.

By the 51st section of the Revised Code, p. 42, it is declared, "that when any of the children of a person dying intestate, or their issue, shall have received from such intestate in his life time, any real or personal estate by way of advancement, and shall choose to come into the partition and distribution of the estate, with the other parcenors and distributees, such advancement, both of real and personal estate, shall be brought into hotchpot, and such party, returning such advancement as aforesaid, shall thereupon be entitled to his, her or their proper proportion of the whole estate so descended."

It is contended on the part of the appellees, that most of the property secured to Selina by the marriage contract was originally the property of Mary Bane, and that it was a donation from a person other than the intestate, and was not required to be brought into hotchpot under the provisions of the statute.　This position might be true, if it had not been in evidence before the court and commissioners, that the intestate (her father,) procured the advancement and paid a consideration for it.　This evidence is furnished by the marriage contract itself, as set out in the record.　It shows on its face, that the consideration for the advancement to Selina was the marriage about to be solemnized with her father, the intestate, one dollar by the intestate in hand paid, one thousand dollars more secured to be paid to the father and mother of Mrs. Bane, and certain other property belonging to the intestate settled on her for life.　All these were good considerations in law, and were all paid by the intestate to secure the advancement to Selina of that part of the property which belonged to Mrs. Bane.　The last will and testament of her father D. W. Brazeale, deceased, shows conclusively, that he considered it in

the light of an advancement from himself; and the petition of Callender and wife, which was evidence in the case, proves that it was so considered in the family.

In the case of Norton *v.* Norton, 3 Peere Williams' Rep. 317, (note o;) it is laid down, that if a father purchase for a son, an advowson or any other ecclesiastical benefice, or if he buy him any office, civil or military, these are held to be such advancements, either partial or complete, according to the comparative value of the estate to be distributed. And although the office be only at will, as a gentleman pensioner's place, or a commission in the army, it is regarded in the same light, Toller on Executors, 376. In this case, the son held his commission from the crown, yet the father having paid the consideration, it was held by Lord Talbot to be an advancement. It was also decided in the case of Edwards *v.* Freeman, in 2 Peere Williams, 440, 444; and in the case of Phiny *v.* Phiny, 2 Vernon, 638; that a provision made for a child by a settlement, either voluntary or for a good consideration, as that of marriage, is an advancement, *pro tanto,* Toller on Executors, 376.

In the leading case of Edwards *v.* Freeman, reported in 2 Peere Williams 440, 442, 445; Lord King lays down the following principles in relation to such advancements as shall be brought into hotchpot. " Nor was it necessary," said he, " that the provision should take place in the father's lifetime. If by deed, he settle an annuity, to commence after his death on such child, it is of the same description. So a reversion settled on a child, as it is capable of being valued, is of the same nature. A portion secured to a child, although *in futuro,* is also an advancement. And were it only contingent, yet when the contingency has happened, it shall be thus considered. A portion for a daughter, to be raised out of land on her attaining the age of eighteen, or the day of her marriage, was accordingly held to be an advancement to her when she married, although she were under that age, and unmarried at the time of the intestate's death. A portion also while contingent, is capable of a valuation, and may, it seems, be brought into hotchpot, Toller on Executors, 377, 378.

In the case of Phiney *v.* Phiney, 2 Vernon, 638; A, on his marriage, covenanted in case of a second marriage, to pay his eldest

[Callender & Wife, Appellants, *v.* McCreary & Wife.]

son by his first wife, five hundred pounds; she died, leaving a son and other children; and A, after a second marriage died intestate. It was decreed that his heir should bring in the money, although he were in the nature of a purchaser under a marriage settlement.

Thus we see, that if the father procured the advancement, although made by another person, or if he paid the consideration, and the advancement is of such a nature as to admit of being valued, yet it must be brought into hotchpot, or the advanced child cannot come in for a residuum. In the case under consideration, the advancement at the time it was secured to Selina, amounted to ten negro slaves; and it was in evidence before the court and the commissioners at the time of distribution, that the slaves had increased to seventeen in number, and that they were worth $5000, and that one of the distributees offered to pay to McCreary and wife the sum of $5000 for them on the day of the division, but that the same was refused, because no doubt, the sum offered was greatly under their value, for the petition of Callender & wife, estimates their value at $10,000. Five thousand dollars, however, would greatly exceed a distributive share of the residuum of the estate to be divided. Would it not therefore be a violation of the statute, and do great injustice to the other distributees, to permit McCreary and wife to hold on to this advancement, and take a full proportion with the other distributees out of the residuum of the estate left to be divided. And yet such is the operation produced by the judgment of the court in refusing to set aside the report of the commissioners. The object of the law was to produce equality among the children of intestates, and for this reason it is thought that the decree of the probate court ought to be reversed.

Hoopes for appellees.

On the 19th day of July, 1819, a marriage contract was entered into, between Mary L. Bane, and Drury W. Brazeale, by which the said Mary, with the consent of the said Drury, conveyed to trustees certain slaves, in *trust* for the said Mary, during her natural life, and for the use of the said Drury, in case he survived her; and after their death, " that the said slaves and their increase, should be delivered to, and vest in, Mary Selina Bra-

zeale, (the daughter of the said Drury,) and now Mary Selina. McCreary, her heirs and assigns forever."

The contemplated marriage took place between the said D. W. Brazeale, and Mary L. Bane. Brazeale is now dead, and his widow, the said Mary, is still living.

Three errors are assigned by the appellants, though they all resolve themselves into one, and constitute the enquiry: whether the probate court erred in decreeing to McCreary and wife a share of the personal estate of the said D. W. Brazeale, without requiring them to bring into *hotch-pot;* as an *advancement,* the negroes secured by the said Mary L. Bane, to the said Selina, by the aforesaid marriage contract.

The negro man, George, conveyed in the marriage contract, by the said D. W. Brazeale, was very properly considered by the commissioners appointed to divide the estate, as an *advancement pro tanto,* and valued at *two hundred dollars.*

It is contended that the other negroes mentioned in the marriage contract, were not an *advancement* by the said D. W. Brazeale.

*First.* Because *they never were his property.* They were the property of Mary L. Bane, and the title to them *never vested in D. W. Brazeale.*

It is well settled, that to constitute an *advancement,* there must be a provision for a child which results from a complete act of the intestate in his life-time, by which he *divests himself of all property* in the subject. 2 Peere Williams, 377, 440.

In the present case, D. W. Brazeale never had a right to the slaves conveyed by Mary L. Bane in the marriage contract, and of course there was no right of which he could divest himself.

Property given or bequeathed to a child by any other person than the parent, is not an *advancement.* See 3d Bac. Abr. 76. Swin. P. 3, Sec. 18. Toller on Executors, page 380.

It cannot be said that the marriage contract was in fraud of D. W. Brazeale's marital rights, for he was *himself a party to it,* and Mary L. Bane had the unquestionable right, with the consent of her intended husband, to convey the whole of her property, even to an entire stranger, and the conveyance would have vested a good and valid title. Clancy's Rights of Women, p. *619, 620-2.*

[Callender & Wife, Appellants, *v.* McCreary. & Wife.]

The object of the law in requiring children advanced by the parent to bring their advancement into *hotch-pot,* before they can receive any further portion of the estate, is, to divide the *estate of the intestate* equally among all his children.

But here were slaves *which never belonged to the intestate,* which he could not have exercised any act of ownership over, at any period of his life—he could not have devised them;—certainly then the law of *hotch-pot* can have no application to such a case.   It is simply the case of a gift of property to a child, by a kind friend, who wished to promote the interest of that particular child, and such a gift is well settled to be no advancement.

Swin. P. 3, Sec. 18.   Toller on Executors, page 380.

No doctrine in the law is better settled, than that to constitute an advancement, there must be something taken from the estate of the parent.

This principle will be found to govern all the cases on the subject.   In no solitary instance has any thing ever been considered an advancement which did not *lessen the parent's estate.*

Apply this principle to the case under consideration, and there can be no difficulty.

Did the slaves secured in the marriage contract by Mary L. Bane, to Mary Selina Brazeale, lessen the estate of D. W. Brazeale?   This cannot be pretended, and for the very obvious reason, that they never constituted any portion of his estate.   How then can it be said that he made an advancement of them, when he never owned them?

Mary T. Brazeale, (now McCreary,) was the sole object of Mary L. Bane's bounty.   It was for her alone she wished to provide, and not for the children generally of D. W. Brazeale.— But if McCreary and wife be required to bring into *hotch-pot* the slaves secured in the marriage contract by Mary L. Bane, to Mrs. McCreary, then the object of her kind benefactress is defeated, and all the children of D. W. Brazeale will be equally benefitted. This certainly never was intended.

In any light in which the subject may be presented, it must be evident that the decree of the probate court is based upon correct principles, and is in accordance with justice, and should be confirmed by this court.

[Callender & Wife, Appellants, *v.* McCreary & Wife.]

Opinion of the court by Mr. Justice TROTTER.

The 51st section of the Orphans' Court Law, Rev. Code, p. 42, provides, that when any of the children of a person dying intestate, or their issue, shall have received *from such intestate,* in his life-time, any real or personal estate, by way of advancement, and shall choose to come into the partition and distribution of the estate with the other parceners or distributees, such advancement, &c. shall be brought into hotch-pot with the whole estate, &c.

The only question which is presented for the decision of this court is, whether the slaves settled on the appellees by the marriage contract, above referred to, were received by Mrs. McCreary from her father, the intestate, in his life-time, and by way of advancement? At the date of this contract, the slaves in question belonged to Mrs. Brazeale, who was then Mary L. Bane, and, for aught which appears from the record, were settled upon Mrs. McCreary by the bounty of a stranger. This does not enter into the legal idea conveyed by the term advancement, as it is understood at common law, or under the statute of distributions. For, by the terms of our act of distributions, as well as from the nature of the thing itself, the portion required to be brought into *hotch-pot* must have been received from the intestate himself. And it has been held in England that what a child receives out of the mother's estate, or from any other source than the intestate, cannot be considered an advancement. Toller's Law of Executors, 380; 2 Peere Williams, 440. Such a provision as shall be construed as an advancement must result from a complete act of the intestate in his life-time, by which he divested himself of all property in the subject, and therefore property given or bequeathed to the child by any other person can never be so denominated. *ibid.*

The cases relied upon by the counsel for the appellants do not, as we conceive, conflict with these principles. In all of them, the intestate himself was the source whence the portion was derived which was ordered to be brought into the residue of the estate.

The judgment of the court below must therefore be affirmed.