NEW YORK STATE MONITOR MILK PAN COMPANY (Limited), Appellant, v. PHILO REMINGTON et al., Respondents.

In an action to recover damages for a breach of contract for the sale of certain milk-coolers manufactured by defendants for the plaintiff, a company engaged in the sale of such coolers, it appeared that the defect complained of was simply in the pans used; that each cooler consisted of an iron frame or standard supporting a vat, in which an enameled pan was placed, all of these parts being separable, and a defect in any one of them could have been remedied by removing the defective part and replacing it with a perfect one. The referee, before whom the case was tried, received evidence, under objection and exception, of bills paid by plaintiff for advertising, of "general expenses," freight paid, commissions allowed agents, the salary and expenses of a supervising agent, the whole cost of the patterns, the expense of plaintiff's superintendent and treasurer and the damages

paid by it to purchasers. Plaintiff had sold a large number of coolers manufactured under other contracts. The referee, while stating in his findings that he allowed plaintiff as damages the value of the pans, if they had been perfect, in fact allowed the cost-price of the coolers. *Held,* error; that the damages were simply the expense of substitution of perfect pans.

(Submitted March 8, 1888; decided April 10, 1888.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made July 1, 1886, which reversed a judgment in favor of plaintiff entered upon the report of a referee and ordered a new trial before another referee. (Reported below, 41 Hun, 218.)

This action was brought to recover damages for an alleged breach of a contract for the manufacture and sale of certain milk-coolers.

The facts, so far as material, are stated in the opinion.

*W. H. Johnson* for appellant. The referee adopted the correct rule of damages. (14 N. Y. 597; 36 id. 93; 34 id. 634; 39 id. 53.)

*Thomas Richardson* for respondents.

FINCH, J. We may assume, without deciding, that the plaintiff established a cause of action which entitled it to recover damages for the defective milk pans, and yet its recovery cannot be sustained for any such amount as that actually awarded. Each cooler manufactured consisted of separable parts, and a defect in one of those parts could be remedied without in the least affecting or destroying the value of the others. Each cooler consisted of an iron frame or standard, supporting a vat, in which the enameled pans were placed. The latter were movable and separable from the rest of the structure, and were defective only in their lining of enamel and that defect could be at once repaired by taking out the defective pan and substituting a perfect one of properly enameled iron, or, if the purchaser preferred, one made of tin. The loss in each case was represented by the expense

of such substitution. When that was paid the original value of the cooler was restored, and it was made just as good as if no defect had existed. That pans could be enameled so as to resist the action of lactic acid contained in milk was demonstrated by the defendants' manufacture of the Parks pans. These were the first that were made, and it is conceded that they fully answered the purpose designed.

But, upon the trial, the plaintiff, instead of proving its actual damages by showing first the value of the pans, if properly made, and then that of those defectively enameled, which probably was no more than their value as old iron, sought by its proof to throw the whole expense of its enterprise, which proved not at all successful, upon these few defective pans. Against the defendants' objection proof was given of the bills paid by the plaintiff company for advertising, which was over $500, and of "general expenses," amounting to more than $5,000. To these were added freight, commissions allowed agents, the salary and expenses of a supervising agent, the whole cost of the patterns, the expenses of the company's treasurer and superintendent, and damages paid to purchasers. When it is remembered that about 400 of the Parks pans, first manufactured, were sold before the Crowley or defective pans came upon the market, the grave error of charging all the expenses of the business upon the defendants is at once apparent.

But the referee, while admitting this improper evidence, did not make it the basis of the damages awarded. What he did determine is stated in his eleventh finding, which reads: "That the *pans* contracted to be delivered under such contract would, on the 2d day of December, 1876, have been worth the sum of $5,239.19, and the pans that were actually delivered to the plaintiff had no market-value whatever;" and so the judgment was fixed at that precise amount, with interest. But the finding was utterly without evidence to support it. No proof was given of the value of the pans, and the sum stated as such was simply the cost-price of the coolers

as paid to the manufacturer, and it was proved that of that cost-price fifty-five per cent only was chargeable to the pans and the balance to the standard and vats.   But an explanation was made in a supplemental report.   The referee said that instead of the value of the pans he meant the value of the coolers, and so he never found or ascertained the value of the pans at all, but awarded the whole cost of the coolers for a defect in a separable part, capable of a complete remedy without destruction of or depreciation in the standards and vats which were not defective.   Beyond that, in so far as he found the coolers worthless, he is controverted by all the evidence and every fact in the case.   When the Crowley pans began to come back for defect in the enamel, the plaintiff never once abandoned or threw away the entire cooler.   On the contrary, in every instance, it took back the pan and replaced it with a new one, and so made the original bargain good at the cost of the new pans alone.   That was the plaintiff's damage.   It never lost at all the cost or the value of the standards and vats, but keeping that in its treasury as received from the purchasers, it got it a second time in the judgment appealed from   The standards and vats which were not claimed to be defective, and which could be as easily equipped with good pans as with poor ones, were first paid for by the purchasers and then again by the defendants.   It is true that some items appear of damages paid to purchasers in money.   How they came to be paid is not explained.   The company on making sales gave to their customers a written or printed warranty, the form of which was proved on the trial.   That warranty was that the porcelain would not be affected by the acid of the milk and would not crack or chip off, and provided, as the consequence of the breach of the warranty, that the company should replace them with new ones.   That they did, and if they paid damages in money, besides replacing the pans, they did more than they covenanted to do.   But these damages, so far as proved, were small, and if added to the cost of the defective pans, the amount would fall far short of the damages awarded.   It may be that the value rather than the cost of

the perfect pans should have been taken as a basis, but that was not proved. If there be in the case evidence from which an approximate value could be derived, which would include anticipated profits, it will be found in the statement of the market-value of the Crowley coolers if they had been perfect. But they *were* perfect except as to the pans, and those could have been made perfect at the cost of manufacture and so the profit have been realized; but if fifty-five per cent of the market-value of the coolers be taken as that of the pans, the judgment is still very much too large.

It is suggested that we may reduce it. We ought not to do that. There is a defect of proof. While we see clearly that the judgment is erroneous, it is impossible for us to say how much less it ought to be. We might form an approximate judgment; but there has been a mistrial, and the General Term properly ordered a new hearing.

The order of the General Term should be affirmed and judgment absolute be rendered against the plaintiff upon the stipulation.

All concur.

Order affirmed and judgment accordingly.