(13 App. Div. 494.)

## McCARTY v. CITY OF LOCKPORT.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

MUNICIPAL CORPORATIONS—ICY SIDEWALK—CONCURRING CAUSES OF ACCIDENT.

　　A jury is not justified in finding that plaintiff's fall on defendant's sidewalk was caused solely by the fact that a stone thereof sloped three inches in a distance of two feet, where the sidewalk was slippery from a thin covering of snow, and there is no evidence as to the cause of the accident except that plaintiff slipped on the sloping stone, and fell.

Appeal from trial term, Niagara county.

Action by George E. McCarty against the city of Lockport to recover for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

D. E. Brong and C. M. Southworth, for appellant.

A. K. Potter, for respondent.

HARDIN, P. J. On the 22d of November, 1892, at about 11:55 a. m., plaintiff fell on the sidewalk on the south side of Main street,

in defendant city, nearly opposite the door leading into Wright's book store, and in the fall fractured his right hip bone, and was confined to his house some eight weeks.   He was passing westerly, and, when nearly opposite the door of the book store, he met a lady passing eastwardly, and, instead of turning to the right, he turned to the left, to allow her to pass, they both being nearly in the center of the sidewalk; and, as he stepped out to the left, he placed his foot upon a stone that was sloping to the north some $3\frac{1}{8}$ inches in 2 feet and 1 inch, and, according to his testimony and that of some of his witnesses, he placed his foot upon the stone known in the diagrams and exhibits produced as "No. 12."   There is considerable evidence, however, tending to show that he placed his foot, not upon stone marked No. 12, but upon some other stone, which was said to be sloping towards the street.   If he stepped on stone No. 12, the stone which lay next north of it, according to the evidence, was sloping towards the south, and there was some depression caused in the sidewalk.   As one witness expressed it, the stones were "dishing."   The city engineer testified:

"The first one dipped towards the street, was lowest next to the street; about three inches. The next dipped about half an inch towards the south,—that is, towards the building; so as between these two courses we had a slight dishing condition, about half an inch, one sloping to the north, and the other sloping to the south."

There is some evidence tending to show that the plaintiff discovered, at the time or just before the accident, the sloping in the sidewalk.   He testified:

"I observed the condition of the walk at this time.   I looked at it, not very carefully.   As to looking at it, so I could see one part of it was better than another, my idea is to notice the walk when I am walking, and I did on this occasion. I did choose this sloping flag to step on, but I was almost drove to step that way to let her pass.   I didn't step the other way because it was rougher.   * * *   I did not step to the left because I was trying to get the best side of this woman to pass upon,—the best walk.   I was trying to give her the best of the walk.   She passed right near in the middle in the walk.   There was about the same room from her to the other curb of the sidewalk as there was on the south side; plenty of room for me to pass between.   * * *   I didn't go to the right because I didn't see fit."

Upon the question whether the plaintiff was free from contributory negligence, a very slender case was made in his behalf.   The sidewalk being on the south side, and the buildings obstructing the sun, there is some evidence tending to show that the sun did not reach the walk to produce a thaw or melting of the snow or ice that had gathered thereupon.   There is some evidence that about an eighth of an inch of snow had fallen in the forenoon of the day of the injuries.   Some of the witnesses say the sidewalk was slippery, and one witness says it was greasy by reason of the snow that had fallen that forenoon upon the sidewalk.   The trial judge carefully submitted the question of the plaintiff's freedom from contributory negligence to the jury, and they, apparently, have found that the plaintiff was free from contributory negligence.

A close question arises upon the evidence as to whether the defendant was guilty of negligence in not having caused the stone

to be brought to a level, the same having been affected by the action of the frost from time to time.　The witness Gooding testifies:

"The whole difficulty with the sidewalk has been occasioned probably by freezing and thawing. There had been one full season of freezing and thawing intervening the time of my actual measurements and the time when I tell the jury the fall there was three inches,—the fall before, the autumn before."

The evidence of the slope of the walk seems to have been derived from measurements and surveys made in May, 1893, and the maps or diagrams were made in October, 1893, and there is some evidence tending to show that the condition of the walk at the time of the measurements was the same as at the time when the injuries were received.　However, the evidence indicates that the action of the frost in the winter of 1892 and 1893 was not very definitely ascertained or allowed for at the time of making the measurements which the plaintiff produced bearing upon the question of the extent of the slope in the walk.

The witness Gaul says the walk was "somewhat slippery."

The witness McMahon testified:

"It had been snowing in the forenoon. It didn't snow so very much. The condition of the snow was kind of warm. It was kind thawing,—soft. * * * I don't believe there was only the snow that fell that morning, about an eighth of an inch of snow, and that was rather soft. * * * It was slippery. As near as I could estimate, there was about an eighth of an inch of snow. It was not snowing at the time he fell. It had been snowing. * * * I know there must have been an eighth of an inch of snow fell."

The witness Dickerson testified:

"The walk was slippery. There had been a sleet of snow like fell on the sidewalk, and it was, as often is, a crust sort of thrown or springing up from the walk, which made it very slippery. I observed that after I got onto the walk myself."

The witness Pound testified:

"It had snowed with a heavy mist in the morning, so that it was,—well, perhaps, sloppy. I wouldn't hardly say it was rain. There was some snow with it. I don't recollect whether it was cold or not. The walks were slippery."

The witness Van Dusen testified:

"I recall that the condition of the walks on that day was slippery, caused by snow on them and ice. I observed that when I was walking at different places along the street."

The witness Nichols says:

"The day was between a rain and a snow. The moisture would freeze after it fell, so that the sidewalk was crusted over something like a window pane would be. The frost had settled on it. It was very slippery."

The witness Dickerson again testified:

"I observed the condition of the walk on that day. As I remember it, it was a sort of a peculiar condition that occurs on that side of the street on account of the buildings shading, and sort of a mist and like snow come down together, and would form a crusting over the sidewalk, to make it exceedingly slippery. That was so throughout Main street on that side,—on the south side."

The witness Taylor testified:

"My recollection is it was a kind of misty morning, and perhaps there had been a little snow fallen in round flakes. Instead of being a flake, it was spherical form; and ice had formed a little, and then it had left a kind of greasy surface—

that is the way I could describe it, perhaps, best—on the sidewalk. The sidewalks were slippery from that. I observed that with reference to this locality where this man lay."

### The witness Williams testified:

"The snow that had fallen during the forenoon was tramped down. A person had to be careful in walking. That was so all along the south side of the street. It was more so on the south side than on the north side. I observed that soon after I saw this man there, generally along the street."

### The witness Gardner testified:

"I remember the sidewalks were slippery that day. There was a little snow. I couldn't pretend to say how much."

Evidently, from the evidence of the condition of the sidewalk by reason of the action of the elements, it was the duty of the plaintiff to use care and caution in passing over the sidewalk on the occasion of receiving the injuries. The evidence is not very satisfactory that he used that care and caution due from him by reason of the effect of the elements upon the sidewalk. The defect complained of was very slight.

In Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401, it was held that a municipality "is not chargeable with negligence in omitting to repair a defect in a street, so slight that no careful or prudent man would reasonably anticipate any danger from its existence." And it was further said in that case, viz.:

"A municipal corporation is not chargeable with negligence when an accident which, according to common experience, was not likely to happen, happens to a traveler by reason of some slight defect in the street, from which danger was not reasonably to be anticipated; such, e. g., as a depression in the middle of a flagged sidewalk, the depth of the thickness of the surrounding flagging, caused by the removal of a small piece of broken stone, and which had existed for several years without any accident resulting therefrom."

In that case the defect complained of seems to have been quite as serious as the one in the case in hand. In the course of the opinion it was said:

"At the point in this walk where the accident occurred, and at the point where two of the flags were united, the edges of the stone were broken off, and the broken parts removed. This left an uncovered depression in the center of the walk of the same depth as the thickness of the flags, which was about two and a half inches. The surface area of this depression was about two feet and two inches in length, by seven and a half inches in width. This depression being in the center, there was, of course, an ample width of flagging on either side. So far as this depression extended, the surface of the walk was the earth in which the flags had been imbedded, and it appears that, in time of rains, water would occasionally accumulate in the center of the place. It had existed in this way for four years. * * * It is scarcely necessary to repeat here, what has often been said before, that a city is not responsible for every accident that may happen in its streets resulting in personal injuries."

### The opinion continues, viz.:

"When, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but, still, an accident happens, which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law."

### The opinion concluded with the following expression:

"We think that the evidence was not sufficient to warrant the submission of the case to the jury, and that the motion should have been granted."

It seems that a literal application of that case to the one in hand would warrant the conclusion that the alleged negligence was not satisfactorily established by the evidence.

In the course of the charge, the learned trial judge told the jury that if the sleet and ice upon the sidewalk caused the injury, or concurred or contributed in causing it—

"Then, notwithstanding the fact that there may have been a slope, the plaintiff in this action could not recover. If, on the other hand, this falling and slipping was due to the defective condition of the walk, to the sloping of these stones 11 and 12, then he may recover, if you reach the conclusion that the city was negligent in maintaining these stones and this walk in that condition."

And, in response to a request made in behalf of the defendant, he also charged the jury:

"That if they find upon the evidence that it was wholly speculative and a mere guess whether the slope in the walk or the accumulated ice or other deposits upon the walk was the efficient cause of the injury, that then they must render a verdict of no cause of action."

And he added:

"That they must be able to say from the evidence that the defective walk, and that alone, caused the injury," before they could render a verdict for the plaintiff.

And he also instructed the jury:

"That if, upon the evidence, they find that it was just as probable that the injury was caused by the ice or other deposit as by the slope, in that event they must render a verdict of no cause of action."

In Searles v. Railway Co., 101 N. Y. 662, 5 N. E. 66, it was said:

"When the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must fail also if it is just as probable that they were caused by the one as by the other, as the plaintiff is bound to make out his case by the preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the damage was caused in consequence of the negligence and unskillfulness of the defendant is not sufficient."

That case was referred to with approval in Taylor v. City of Yonkers, 105 N. Y. 209, 11 N. E. 642. In the latter case the plaintiff slipped upon the ice, and it was said that it was—

"A sufficient, certain, and operating cause of the fall. No other explanation is needed to account for what happened. It is possible that the slope of the walk had something to do with it. It is equally possible that it did not. * * * To affirm it is a pure guess and an absolute speculation. Are we to send it to a jury for them to imagine what might have been? The great balance of probability is that the ice was the efficient cause. There is no probability not wholly speculative that the slope was also such. * * * No knowledge or intelligence can determine or ascertain that such a slope had any part or share in the injury, and to send the question to the jury is simply to let them guess at it, and then, upon that guess, to sustain a verdict for damages. I am quite willing to hold cities and villages to a reasonable performance of duty, but I am not willing to make them practically insurers by founding their liability upon mere possibilities."

Applying the doctrine just quoted to the case in hand, it is not reasonable to say that the evidence indicates that the injuries which the plaintiff received were due solely to the alleged defect in the structural condition of the sidewalk. To say that the slip-

pery condition of the walk, caused by the elements, was not a proximate cause of the injuries, is to indulge in speculation, surmise, or guess. The evidence is not satisfactory to warrant submitting the case to the jury on that question. It is true, the jury, under the careful and critical charge of the learned trial judge, has so found, but the evidence upon which that finding is predicated is not satisfactory.

The Taylor Case was referred to in Hunter v. Railroad Co., 116 N. Y. 624, 23 N. E. 11, with approval, and it was said:

"If the case is left in such a condition that it is just as possible the injury came from one cause as another, the judgment must be reversed."

The Taylor Case was also referred to in Kaveny v. City of Troy, 108 N. Y. 577, 15 N. E. 727,—and in the course of the opinion it was said:

"Abundant reason and explanation existed in the conceded operation of natural causes, and the jury, as we have heretofore said, were not at liberty to guess at or speculate upon a possible ground of action against the city."

The Taylor Case was again approved in Grant v. Railroad Co., 133 N. Y. 657, 31 N. E. 220, and it was held that:

"If the evidence leaves it just as probable that the injury was the result of one cause as of the other, the plaintiff cannot recover."

The Taylor Case was referred to with approval in Ayres v. Village of Hammondsport, 130 N. Y. 665, 29 N. E. 265, and it was held that a verdict based upon "mere guess or speculation" should not be upheld.

In Safford v. Village of Green Island (Sup.) 26 N. Y. Supp. 669, a ridge had been formed across the sidewalk, which was covered with ice, and described in the language of one of the plaintiff's witnesses as follows:

"So that the ridge was slippery, glary, glassy. It was clear ice, glassy ice; shiny, like the surface of glass, and very slippery."

In the course of the opinion delivered in that case, it was said:

"It is impossible to determine from the evidence whether the plaintiff would or would not have fallen except for the ridge upon the sidewalk. The jury could have merely guessed whether it was the ridge or the ice, or both combined, that caused the accident. The defendant was not responsible for the slippery condition of the sidewalk, or for the ice upon the ridge; and such being the case, and the plaintiff not establishing that the accident would not have occurred but for the presence of the ridge, she was not entitled to recover, and the nonsuit was proper."

The burden was upon the plaintiff to establish that the defendant was chargeable with negligence, and that, if it "had not failed to perform its duty, the injury would not have been sustained. This fact cannot rest in mere speculation or conjecture, but must be founded upon evidence, which permits the jury to reach that conclusion." Stacy v. Town of Phelps, 47 Hun, 56. The same principle was referred to with approval in Whittaker v. Canal Co., 49 Hun, 403, 3 N. Y. Supp. 576.

It was properly assumed at the trial that the mere fact that there was ice on the sidewalk, rendering it slippery, did not make the defendant liable. Buck v. Village of Glens Falls, 4 App. Div. 323, 38 N. Y. Supp. 582.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit, on several grounds specified; and the motion was denied, and an exception was taken. At the close of the whole evidence, the defendant asked the court to direct a verdict in its behalf. The motion was denied, and an exception was taken. We think the evidence insufficient to support the verdict.

Judgment and order reversed, and a new trial ordered, with costs to abide the event. All concur.