### O'BRIEN v. CITY OF SYRACUSE.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—PROVINCE OF JURY.

In an action for injuries caused by a defective sidewalk, it appeared that the injury was sustained on a dark night; the nearest light being some distance away, and obscured by trees. The sidewalk had a hole in it 5 or 6 inches wide and 18 inches long, which had been there for some time, and contained other holes which had been covered. *Held*, that the questions of plaintiff's contributory negligence, and of defendant's negligence in not repairing the sidewalk, were for the jury.

Appeal from trial term, Onondaga county.

Action by Michael O'Brien against the city of Syracuse. From a judgment entered after the grant of a nonsuit, plaintiff appeals. Reversed.

Plaintiff, in his complaint, alleges that on the 16th day of May, 1896, between the hours of 10 and 11 o'clock in the evening, while he was carefully walking on the sidewalk on Taylor street, unaware of the fact that there was a hole or defect in the sidewalk, he suddenly stepped into a hole in the

sidewalk, and was thrown forward, and received the injuries of which he complains. Upon the trial it was admitted "that the notices were served as required by statute, and were served as alleged in the complaint," before this action was commenced. At the close of the plaintiff's evidence the defendant submitted a motion for a nonsuit and dismissal of the complaint "on the ground that the plaintiff has failed to prove facts sufficient to constitute a cause of action against the defendant"; and, second, that the city had no notice, "either actual or constructive, of the condition of this walk"; and, third, "that the plaintiff contributed to the injury by his own negligence." The motion was granted, and the plaintiff took an exception. In granting the motion, the court observed, "The sole question involved is whether the evidence was of such character as to warrant a finding by the jury of negligence on the part of the defendant."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

M. E. Driscoll, for appellant.
James E. Newell, for respondent.

HARDIN, P. J. On the evening of the 16th of May, 1896, the plaintiff joined Miss Noonan near McCarthy's store, and passed towards her home, which was in Taylor street. They entered Taylor street, and were traveling east on the north side of the street, on the sidewalk, between the hours of 10 and 11, the night being dark; and as they were passing along in front of No. 317 the plaintiff caught his foot in a hole in the sidewalk, and received the injuries for which he complains. It is claimed the strain was so great on his foot or toes, which were fastened under the walk, that the ligaments of the ball of his foot were ruptured. The night was dark, and at the point where the injuries were received the electric light was somewhat obscured by the trees, which light was 192 feet distant from the point where the injuries were received. The sidewalk was built of planks about 2 inches thick, running lengthwise, and they had become rotten and decayed; and there was a hole commencing near the easterly end of the planks constituting the walk in front of Knowland's house, which was No. 317 Taylor street, extending eastwardly some 2 feet,—the hole being about 5 inches wide in the westerly part, and 6 inches in the easterly part; and as the plaintiff was passing over it he stepped his foot into the aperture, and it was caught, and he was thrown, and met with the sprain which he complains of. Several witnesses were called to describe the condition of the walk at the time of the injuries, and its condition for a long time previous to that. Inasmuch as the plaintiff was nonsuited, he is entitled to the most favorable evidence that was given, in considering the question as to the propriety of the nonsuit.

The witness Toner testified that the following morning, having learned that there was an accident the night before, he went to examine the sidewalk. Toner lived in the house next easterly of Knowland, at No. 319. He testifies:

"I observed that walk in front of 317 from time to time before that. There was a hole in the east end of the plank walk; the plank running lengthwise. There was a hole in the sidewalk, rotted out between the outside plank and the next one to it, on the south side and east end. I should think it was rotted out right to the east end of the plank, about eighteen inches or two feet towards the west. The hole was eighteen inches or two feet—from

52 N.Y.S.—15

eighteen inches to two feet—long. Five to six inches wide, more or less. I didn't measure it. The east end of the hole was the widest. I could not say how long that hole had been there before the time of the accident. It had been there some time. It may have been a month. It may have been two months. * * * I think those plank were three inches thick. There were other holes in the same walk in which this was. They were covered over, some with cleats, and some with tin."

In the course of his cross-examination the witness said:

"I could not say whether this plank rested upon the ground or upon scantling. I never looked to see. The hole was five or six inches deep at that time."

The witness Linehan testified that he had seen the hole there for a period of a month before the accident, and he says that it was about four or five inches long and five or six inches wide.

Miss Noonan, who was walking with the plaintiff at the time he received the injuries, was called, and testified in corroboration of his description of the hole, and of the manner of the accident, and its occurrence, in front of No. 317; and in the course of her testimony she says:

"This hole was in the outside plank, on the east end, or very near between the two. Very near between the outside plank and the one next to it. Very close to the east end of the sidewalk in front of No. 317. It was about ten inches from the end. The hole extended the whole length of the walk. * * * The deepest part was about ten inches from the east end of the walk. It was deep enough to see the ground underneath."

And she adds that the hole had been there a long time before the plaintiff was hurt, and states that, according to her recollection, it had been there for more than six weeks. She adds:

"I think the hole was about four inches deep from the surface of the plank. The deepest point was about ten inches from the east end of the plank. About ten inches from the east end of the walk. As you went west, the hole was not so big. It was not so deep. He caught his foot under the plank where the hole was. The plank ran the way he was walking. I don't know whether he caught it sideways, or his toe under it, or how. It was dark. This hole which I speak of grew narrower as you go west. * * * The walk which I speak of, right there at that time, was rotten in two places on the outside and inside planks."

The learned trial judge in granting the nonsuit seemed to assume that the evidence was sufficient to establish that the plaintiff was free from contributory negligence, or at least that it would warrant a submission of that question to the jury, and placed his decision upon the ground that the circumstances disclosed by the evidence were not sufficient to present a question of fact to the jury as to the defendant's alleged negligence. In making the ruling he relied largely on the case of Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401. In deciding McCarty v. City of Lockport, 13 App. Div. 494, 43 N. Y. Supp. 693, this court had occasion to refer to the Beltz Case, and to apply the doctrine of it to the case then before the court, as will be seen by the quotations in the opinion from the Beltz Case at page 498, 13 App. Div., and at page 401, 42 N. E. We have taken occasion to examine the appeal book in the Beltz Case (volume 2061, Court of Appeals Library). The evidence in that case indicates that the sidewalk was built of flagging stone, and that the aperture in which

the plaintiff claimed to have received the injuries was caused by the breaking off of the corners of two of the flagstones near the middle of the walk; and the depression, as claimed by the witnesses on the part of the plaintiff, was two inches, and on the part of the defendant only an inch and a half; and the defendant produced a diagram showing the depression to be only an inch and a half. That accident occurred in the daytime, when the party injured could see "where she was going"; and the plaintiff in that case testified that she had noticed the hole on passing over the street on a prior occasion. Several witnesses were called, who testified that the aperture was not such as to attract the attention of the ordinary observer, and that the greatest depth did not exceed two inches, and that the dirt sloped each way. One of the witnesses described the dirt as "sloped up against the edge of the stone." One of the defendant's witnesses, a policeman, testified that he had patrolled the beat where the accident occurred, and that "he never noticed any hole, or anything the matter with the sidewalk." The evidence showed that that aperture did not exceed seven and one-half inches at its widest point, and five inches in the next widest point, and that the break from the flagging extended two feet and two inches, and that there was that flagging on either side of the hole, where a party in broad daylight might easily have passed without passing over the aperture caused by the crumbling off of the edges of the two flagstones. We think the facts disclosed in that case, and referred to and relied upon in the opinion delivered in the court of appeals, are quite unlike the facts in the case before us, and that although it was held in that case that the defendant was not guilty of negligence "in omitting to repair a defect in a street so slight that no careful or prudent man would reasonably anticipate any danger from its existence," that doctrine ought not to be applied to the facts in the case before us. The evidence was sufficient to warrant the submission of the case to the jury upon the question of the defendant's negligence in leaving the sidewalk in the broken, defective condition in which the witnesses describe it. The city was not an insurer, nor was it bound to furnish an absolutely safe and proper highway. It was, however, bound to exercise active vigilance towards keeping its streets in proper repair. Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858. In the case of Hunt v. Mayor, etc., 109 N. Y. 134, 16 N. E. 320, it was held that the duty cast upon a municipal corporation to keep its streets in a safe condition for travel is not absolute, "so as to impose liability upon the corporation in every case where a traveler, without fault on his part, sustains injury from a defective street. Its liability depends in all cases upon negligence; that is, upon the fact whether it has omitted to exercise due care, under the circumstances, in their maintenance and reparation." It was said in Lane v. Town of Hancock, 142 N. Y. 519, 37 N. E. 473, that, upon the evidence being presented in a negligence case, there is a preliminary question for the court, whether the evidence would properly warrant a verdict for the party producing it. We think the trial court took an improper view of the evidence, and erroneously withheld from the jury the question of whether the defendant was guilty of negligence in leaving the side-

walk in the rotten, defective, dangerous condition in which it was, according to the testimony of the witnesses, at the time the plaintiff received the injuries.

The learned counsel for the respondent calls our attention to Waggener v. Town of Point Pleasant, 42 W. Va. 798, 26 S. E. 352. That case differs quite essentially from the one before us. In that case the plaintiff caught one of his feet under the point of a "projecting brick," and was thrown to the ground; and it is stated in the course of the opinion in that case, viz.: "It is not alleged as to how much the brick projected, or that he was exercising ordinary care."

We think the question of whether the plaintiff was free from contributory negligence was one which ought to have been submitted to the jury (McPherson v. City of Buffalo, 13 App. Div. 502, 43 N. Y. Supp. 658, and cases there cited), and that the question of whether the defendant was guilty of negligence in omitting to repair or cause to be repaired the sidewalk where the plaintiff received the injuries was a question of fact, which ought to have been submitted to the jury, and therefore the nonsuit was erroneous.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.