CHARLES H. HUNTER, Respondent, *v.* THE NEW YORK, ONTARIO AND WESTERN RAILROAD COMPANY, Appellant.

In an action to recover damages for injuries alleged to have been caused by defendant's negligence to plaintiff, a brakeman in its employ, plaintiff's evidence was to the effect that he was instructed to ride on top of the cars at places whereïit might be necessary to apply the brakes, and that on approaching such a point he went on top of a box car and sat down where the brake was and remembers nothing more. It appeared that a tunnel is located at that particular spot on defendant's road, which for two hundred feet from its west end, at which plaintiff's train entered, is twenty feet high; that then a brick arch commences and continues for eighty-five feet, reducing the height of the tunnel to fifteen feet nine inches, measured from the rail, and the space between the top of the car and the bottom of the arch was four feet and seven inches. Plaintiff was found beside the track, about three hundred feet from the east end of the tunnel, with a gash in his forehead, which, if received from having come in contract with the arch while sitting as he testified, would have called for a height of body of four feet eight inches, or a full height of over eight feet. No evidence was given as to plaintiff's height. The court charged the jury that if plaintiff was sitting down it was for them to say whether his head would reach as high as the bottom of the arch. A motion to dismiss the complaint, made on the ground that the facts proved were insufficient to constitute a cause of action, was denied. *Held* (BRADLEY and VANN, JJ., dissenting), error; that the court will take judicial notice of the height of the human body and that it would

be impossible for a man, unless of a height unprecedented, sitting as plaintiff testified, to strike his head against the arch.

Courts may take judicial notice of facts which are a part of the general knowledge of the country and which are generally known and have been duly authenticated in repositories of facts open to all, and especially so of facts of official, scientific or historical character, and within this rule the court may take judicial notice of the size and height of the human body.

While all reasonable intendments should be indulged in to support a judgment, the court will not assume the existence of a fact which is contrary to the ordinary course of nature, solely because the party raising the question did not give evidence in regard thereto upon the trial.

(Argued October 30, 1889; decided December 3, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for injuries received by plaintiff while in defendant's employ as a brakeman.

The facts are sufficiently stated in the opinion.

*William Vanamee* for appellant. There was no proof which warranted the submission of the question of defendant's negligence to the jury, and the motion for a nonsuit should have been granted. (*Baulec* v. *N. Y. & H. R. R. Co.,* 59 N. Y. 356, 366; *Toomey* v. *Railway Co.,* 3 C. B. 146; *Taylor* v. *City of Yonkers,* 105 N. Y. 202, 209; *Bond* v. *Smith,* 21 N. E. R. 128; *Clement* v. *R. K. Co.,* 3 N. Y. Supp. 169; *Searles* v. *M. R. Co.,* 101 N. Y. 661; *Hays* v. *F. S. S. R. R. Co.,* 97 id. 259; *Hart* v. *H. R. B. Co.,* 84 id. 62; *Derby* v. *K. C. R. Co.,* 4 S. W. Rep. 303.) The physician having been called in to treat and amputate the plaintiff's leg, and having acted solely in that capacity, could testify only as to such information as is necessary to enable him to act in that capacity. (Code Civ. Pro. § 834; *People* v. *Schuyler,* 106 id. 304; *Edington* v. *A. L. Ins. Co.,* 77 id. 569; *Grattan* v. *M. L. Ins. Co.,* 80 id. 281; *Renihan* v. *Dennin,* 103 id. 573; *Hoyt* v. *Hoyt,* 112 id. 493–515; *Pierson* v. *People,* 79 id. 424, 433; *Estate*

*of Darragh*, 15 N. Y. S. R. 452.) The motion for a nonsuit should have been granted because the plaintiff wholly failed to show that he was free from contributory negligence. The burden is upon the plaintiff to establish affirmatively the absence of contributory negligence. (*Hart* v. *H. R. B. Co.*, 84 N. Y. 56 ; *Gibson* v. *E. R. Co.*, 63 id. 449 ; *Hinz* v. *Starin*, 3 N. Y. Supp. 290 ; *Ryan* v. *L. I. R. Co.*, 51 Hun, 607.) Plaintiff's failure to descend in the first case, or the act of ascending in the second case, constitutes contributory negligence. (*Derby* v. *K. C. R. Co.*, 4 S. W. R. 303.) Railroad employes are presumed to understand the nature and hazards of the employment when they engage in the service, and they assume all the ordinary risks and obvious perils incident thereto. Such risks are presumably within the employe's contract of service. (*Gibson* v. *E. R. Co.*, 63 N. Y. 449 ; *De Forest* v. *Jewett*, 88 id. 264 ; *Owen* v. *N. Y. C. R. R. Co.*, 1 Lans. 108 ; *Ryan* v. *L. I. R. R. Co.*, 51 Hun, 607 ; *Hickey* v. *Taafe*, 105 N. Y. 26 ; *Evans* v. *L. S. & M. S. R. Co.*, 12 Hun. 289 ; *Lovejoy* v. *B. & L. R. Co.*, 125 Mass. 79 ; *Kennedy* v. *P. R. R. Co.*, 17 Atl. R. 7 ; *Crowley* v. *P. Mills*, 19 N. E. R. 344.) The tunnel arch was a necessary and proper structure, and had been constructed upwards of seven years. The duty of the master is fulfilled when he provides safe structures, such as a prudent person would furnish for his own use, and gives the warnings and signals designated by law. (*Leonard* v. *Collins*, 70 N. Y. 90 ; *Hickey* v. *Taafe*, 105 id. 25.)

*T. A. Read* for respondent. It is the duty of a master to provide his servants with suitable and safe structures, machinery, track and road bed, other materials and appliances necessary for the proposed work. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521 ; *Flike* v. *B. A. R. R. Co.*, 56 id. 549 ; *Cone* v. *D. L. & W. R. R. Co.*, 81 id. 206 ; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546 ; *Gage* v. *D. L. & W. R. R. Co.*, 14 Hun, 446 ; *Planck* v. *N. Y. C. R. R. Co.*, 60 id. 607 ; *Mehan* v. *B. & N.*

*Y. R. R. Co.*, 73 id. 585 ; *Kirkpatrick* v. *N. Y. C. & H. R. R.. R. Co.*, 79 N. Y. 240 ; *Kain* v. *Smith*, 80 id. 458 ; *Fuller* v. *Jewett*, 80 id. 46 ; *Hong* v. *R. R. Co.*, 10 Otto, 213.) Plaintiff had the right to assume that defendant had exercised due care in that respect and that he would not be unduly exposed. (*Connelly* v. *Pallion*, 44 N. Y. 619 ; *Noyes* v. *Smith*, 7 id. 59 ; *Ford* v. *F. R. R. Co.*, 110 Mass. 240 ; *Toledo, etc., R. R. Co.* v. *Ingraham*, 77 Ill. 304.) The defendant was negligent in not informing plaintiff of the arching built in the tunnel. This the plaintiff could not know of by going through the tunnel except by some such experience as he had, at the risk of his life. (*Williams* v. *D. L. & W. R. R. Co.*, 39 Hun, 439 ; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 421 ; *Fish* v. *B. & A. R. R. Co.*, 53 id. 549.) The servant, by accepting his employment, assumes the usual risks and perils incident to the use of the machinery and property of the defendant, so far as the risks are apparent. (Wharton on Neg. 206–214 ; *Gibson* v. *E. R. Co.*, 63 N. Y. 449 ; *Mehan* v. *R. R. Co.*, 73 id. 584 ; *Fradenburgh* v. *N. C. R. Co.*, 114 id. 583.) The negligence of the conductor or other employes of the defendant in not informing plaintiff of the arching that had been built in this tunnel will not, as defendant insisted at the trial and before the General Term, exonerate the defendant from liability. (*Cone* v. *D. L. & W. R. R. Co.*, 81 N. Y. 207 ; *Wilds* v. *H. R. R. R. Co.*, 23 How. 492 ; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 18.) The court committed no error in excluding the evidence of the physician. (*Grattan* v. *M. L. Ins. Co.*, 80 N. Y. 297 ; 99 id. 287 ; 23 Week. Dig. 42 ; *Pierson* v. *People*, 18 Hun, 248.) The charge of the trial court was eminently fair to defendant, and defendant has been justly defeated on every point. The jury saw the plaintiff, saw how tall he was, saw all the witnesses and heard their evidence, and where inferences are to be drawn by a jury from facts and circumstances, submitted for their consideration, the appellate court will, with great reluctance, if ever, interfere with their determination. (*Naugatuck Co.* v. *Babcock*, 22 Hun, 481 ; *Rounds* v. *D. L. & W. R. R. Co.*,

64 N. Y. 138; *Cothan* v. *Collins,* 29 How. 155; *Head* v. *Smith,* 44 id. 476; *Dollenr* v. *Leitz,* 9 Daly, 17.)

BROWN, J. Assuming that the plaintiff was struck upon the head by the brick arch within the tunnel, and that he was, as a result of that blow, thrown from the cars and injured, I think there was ample evidence for the jury to determine that the defendant was guilty of neglect producing the accident, and that the plaintiff was free from carelessness contributing to it. The jury were warranted in finding that the only notice that the plaintiff had of the existence of the arch was that received from the tell-tale. This was located about two hundred feet west of the west entrance of the tunnel. It served as a warning of the approach to the tunnel, but it gave no notice of the obstruction within the tunnel. A person receiving its warning and noticing the height of the tunnel might naturally suppose that the height at the entrance would be maintained throughout its length, and if the height was at any point reduced that notice of that fact would be given. Relying, therefore, upon what would be apparent to his observation, he was exposed to· a danger of which he had no notice or information.

The defendant evidently perceived the weakness of this part of its case and gave evidence of actual notice of the existence of the arch to plaintiff; but upon that question the verdict of the jury is in accord with the plaintiff's testimony. The plaintiff also testified that he was instructed to ride upon the top of the cars at places where it might be necessary to apply the brakes. He was approaching such a point on the road when the accident happened, and it was a fact for the jury to determine whether, in going from the top of the car at the time he did, he was guilty of any negligence. Certainly, if he had a right to assume, as we think he had, in the absence of notice as to the existence of the arch, that there was room in the tunnel to maintain a standing position, he would not necessarily be careless in occupying such a position on the car near his post of duty. The difficult question in the case is to reconcile the plaintiff's theory of the accident with the evidence.

It appears that the tunnel at the west entrance was twenty feet high. Two hundred feet from the entrance the brick arch began and continued for a distance of eighty-five feet. It reduced the height of the tunnel to fifteen feet nine inches, measured from the rail. The plaintiff testified that he left the engine and went on the top of a box car and sat down. His exact words are : " I was sitting down on the box-car, on the head box-car, where the brake was; I went out on the box-car and sat down, and that is the last I remember."

This car was identified and proven by a witness called by plaintiff to have been eleven feet two inches high from the rail to the foot-board. that the men walk on in the centre of the roof. There was, therefore, a space of four feet and seven inches between the top of the car where plaintiff was sitting and the bottom of the arch. There was a cut or gash on plaintiff's forehead, which it is claimed he received by coming in contact with the arch, so that his head, to have received a blow at that point, must have been at least four feet eight inches above the foot-board on the top of the car.

The plaintiff's counsel in his brief has endeavored to show the space between the car and the arch to have been much less, but the measurements appear, without contradiction, to be those I have stated. The theory of the plaintiff's case was that he was rendered unconscious by a blow received on his head from coming in contact with the arch, and that he was carried by the train to a point about three hundred feet east of the east end of the arch, where he fell from the car and was run over and his foot crushed.

That he might have been carried to the point where he was found is not improbable, but that he could have received a blow on the head from the arch while sitting upon the top of the car would appear to be physically impossible.

There was no evidence given on the trial as to the plaintiff's size or height, and the argument is now made that as the jury saw him, and could, therefore, judge of his size, it must be assumed that it was not impossible for his head to have reached as high as the arch; and the learned judge who pre-

sided at the trial appears to have submitted this question to the jury saying : " If the plaintiff was sitting down, it is for you to say whether his head would reach to that height."

The verdict of the jury rests upon an affirmative answer to this question, and we are now called upon to say whether we will accept that finding and sustain the judgment, or whether we will take judicial notice of the height of the human body and the measurements of its separate parts, and so taking notice of those facts reverse a judgment that is based upon a finding clearly contrary to the laws of nature.

No exception was taken to the charge, but by an exception to the denial of the motion to dismiss the complaint made at the close of the plaintiff's case, and renewed at the close of the testimony, on the ground that the facts proven were insufficient to constitute a cause of action, the question is properly before this court.

Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case.

The rule that permits a court to do so is of practical value in the law of appeal, where the evidence is clearly insufficient to support the judgment. In such case judicial notice may be taken of facts which are a part of the general knowledge of the country, and which are generally known and have been duly authenticated in repositories of facts open to all, and especially so of facts of official, scientific or historical character.

Thus it has been held that courts will take judicial notice of matters of public history, such as the existence of the late civil war and the particular acts which led to it. (*Swinnerton* v. *Columbian Ins. Co.*, 37 N. Y. 174; *Woods* v. *Wilder*, 43 id. 164.) Of the general course of business in a community, including the universal practice of the banks. (*Nat. Bk.* v. *Hall*, 83 N. Y. 338; *Yerkes* v. *Nat. Bk.*, 69 id. 382, 387.) That books of general record giving descriptions and standing of all ships, known as " American Lloyds," " The Green Book" and " The Record Book," are referred to by business men for

the purpose of ascertaining the condition, capacity and value of ships. (*Slocovich* v. *Orient Mutual Ins. Co.*, 108 N. Y. 56, 63.) Of the value of "pounds" in our money, and in rendering judgment convert them into dollars. (*Johnston* v. *Hedden*, 2 Johns. Cas. 274.) Of the expectation of human life. (*Johnson* v. *Hudson R. R. Co.*, 6 Duer, 634.) Of the course of seasons and husbandry, and the general course of agriculture, and that a crop at a certain date would not have matured. (*Ross* v. *Boswell*, 60 Ind. 235 ; *Floyd* v. *Ricks*, 14 Ark. 286.) Of the time of the rising and setting of the sun and moon. (*Case* v. *Perew*, 46 Hun, 57.)

And generally of those things which happen according to the ordinary course of nature; the course of time and the movements of the heavenly bodies, the coincidence of the days of the week with the days of the month; ordinary public fasts and festivals and legal weights and measures. (1 Greenl. on Ev. chap 11, § 5.)

And to ascertain such well-known facts recourse is had to such documents and references as are worthy of confidence.

Within this rule the court may take notice of the size and height of the human frame, and, doing so, we know that the plaintiff's head could not have reached to a height sufficient to come in contact with the arch.

We know that the average height of man is less than six feet. That the average length of the body from the lower end of the spine to the top of the head is less than thirty-six inches. That the measurement varies but little in adults, and that the chief difference in the height of men is in the length of their lower limbs.

To assume, therefore, as we must, in order to sustain the judgment, that the top of the plaintiff's head, when in a sitting position, was four feet seven inches above the board on which he was sitting, is to assume him to have been not only far above the average height of man, but of a height beyond that of which we have any authentic record.

It has not been claimed by the respondent that the plaintiff was a man of extraordinary height, and if he was, I think a

fact so rare in the course of nature should be made apparent in some way on the record.

It can be asserted, I think, without contradiction, that a man whose forehead would be four feet seven inches above a seat upon which he was sitting would have a frame at least nine feet high. History affords no authenticated instance of men attaining such height. Buffon, in his Natural History, records instances of men attaining extraordinary height, but modern writers do not accept his statements. Pliny tells of an Arabian nine feet high, but the story is not authenticated.

In the article upon " Giants " in the Encyclopedia Britannica, it is stated that the tallest man whose stature has been authentically reported was Frederick the Great's Scotch giant, who was eight feet three inches tall. In the College of Surgeons in London there is a skeleton of an Irishman, who was named Charles Bierne, which measures eight feet high. Such heights are of rare occurrence, and the height of nine feet has probably never been attained by man. Suppose the proof had shown that, upon approaching the entrance to the tunnel the plaintiff was standing up and his body had been found between the entrance and the west end of the arch, would it be assumed that his head had struck the roof of the tunnel, which would have been eight feet ten inches above the top of the car. In other words, would the court, to sustain the judgment, assume him to have been over eight feet and ten inches in height. Yet that assumption would call for no greater exercise of the imagination than to suppose his head to have reached the bottom of the arch when he was in a sitting posture. To assume either fact requires us to believe that the plaintiff was nearly, if not fully, nine feet in height.

I think, therefore, the court may take judicial notice of the fact that a man could not strike his head against an obstruction four feet and seven inches above the place on which he was sitting, and that being so, the negligence of the defendant was not established.

In no other way or manner is it suggested that the defendant was negligent, except in the maintenance of the arch and

the failure to warn the plaintiff of its existence. Unless the plaintiff's injuries can, by a predonderance of evidence, be attributed to those causes, his case must fail. Unless the proof shows that he struck his head against the arch, the judgment can only be sustained on pure speculation. There are numerous ways in which the accident might have happened, but none other have any support in the testimony, and if the case is left in such a condition that it is just as possible the injury came from one cause as another, the judgment must be reversed. (*Taylor* v. *City of Yonkers,* 105 N. Y. 202.)

It has been said that an appellate court will not take judicial notice of facts not proven on the trial for the purpose of reversing a judgment. While all reasonable intendments should be indulged in to support a judgment, the court is not called upon to assume the existence of a fact which is contrary to the ordinary course of nature, solely because the party raising the question did not give oral testimony upon it at the trial.

In a case like this, in which it is well known that it can be submitted to a jury with generally but one result, the judgment should not be upheld when it is apparent that the verdict is not supported by the evidence.

Here the finding, which must exist to support the judgment, is so contrary to our general knowledge, and so far outside of common occurrence, that it may, in the absence of further proof, be regarded as contrary to nature, and hence untrue, and substantial justice will be done by reversing the judgment and granting a new trial.

Upon such trial, if the plaintiff was a giant in stature, or if, as claimed by the learned counsel for respondent, the space above the car was less than I have stated, such facts may be made clear.

The judgment should be reversed, and a new trial granted, costs to abide event.

FOLLETT, Ch. J., POTTER and PARKER, JJ., concur; BRADLEY and VANN, JJ., dissent for the reason that the ground upon which Judge BROWN founds his conclusion was

not specifically raised at the trial, and it does not necessarily appear that it might not have been obviated if it had been so raised there; and that, in such case, judicial notice of a fact, upon which no evidence was given or point made on the trial, should not be taken for the purpose of reversing a judgment; HAIGHT, J., did not sit.

Judgment reversed.