Hillsborough, ⎰
  Dec., 1897. ⎱

| | |
|---|---|
| 69 | 285 |
| †69 | 355 |
| 69 | 435 |
| 69 | 285 |
| 70 | 130 |
| 70 | 310 |
| 70 | 444 |
| 70 | 445 |
| 70 | 452 |
| †70 | 533 |
| 70 | 632 |
| 69 | 285 |
| 71 | 3 |
| 71 | 408 |
| 71 | 569 |
| 69 | 285 |
| 72 | 363 |
| 72 | 519 |
| 69 | 285 |
| †74 | 134 |
| †74 | 235 |
| †74 | 433 |
| 74 | 431 |
| 74 | 435 |
| †74 | 473 |

DESCHENES, *Adm'r, v.* CONCORD & MONTREAL RAILROAD.

In an action against a railroad company for injuries to a freight brakeman by reason of a defective bridge guard, it is incumbent upon the plaintiff to present evidence from which the existence of the defect alleged and the fact that it was the cause of the injury complained of may properly and reasonably be found.

If upon all the evidence it is clear that reasonable men cannot differ in the conclusion that the questions at issue are undetermined, the finding must be against the party sustaining the burden of proof.

An action for negligence cannot be maintained when the evidence fails to disclose an open, visible connection between the injury and the negligence alleged, and when the facts proved are equally consistent with a theory of the accident that would discharge the defendants as with one that would charge them.

CASE, by the administrator of Louis J. Larivee, who is alleged to have been killed September 18, 1894, at the overhead bridge at Robinson's Ferry on the Concord Railroad. Larivee was in the employ of the railroad as a brakeman on a freight train, and was not quite twenty years old at the time of his death. He had worked for the railroad about three months in the fall of 1893, and for about two weeks of that time had been a freight brakeman. He left the road in November, 1893, and returned to work again in June, 1894, and was employed as a freight brakeman until the day of the accident. From July until his death he was brakeman on a train which left Concord at 7.30 o'clock P. M. and arrived at Nashua at 10.30, and on a train which left Nashua at 3.30 o'clock A. M. and arrived at Concord at 6.30. Robinson's Ferry overhead bridge is about six miles south of Concord and three miles north of Hooksett, and Larivee's train passed there going up at about 5.30 o'clock A. M. The bridge is seventeen feet and six inches above the track. There is a bridge guard or telltale one hundred and thirty-five feet south of the bridge. From the bottom of the telltale wires to the track beneath, the distance is seventeen feet and three inches. There were thirteen wires in a distance of ninety-eight inches, supposed to be equally distant and about eight and one sixth inches apart. The wires were about four feet long and were suspended from an arm twenty-one feet and an inch above the rail. Larivee was five feet and four or five inches tall. On a high car he would have to stoop; on an ordinary car he would pass under the bridge safely. He was the head brakeman and

rode on the engine when not at work on the cars.    At the time of the accident, the train which left Nashua for Concord at 3.30 o'clock A. M. had fifty-six cars of different kinds, and the weather was foggy.    Larivee was seen on top of the train after passing Hooksett, but he did not come forward to the engine. The train arrived at Concord about six o'clock.    The rear brakeman on the train went forward on top of the cars and found Larivee dead, lying on his back on a refrigerator car, seven to ten cars from the head end of the train.    This car was twelve feet and nine and a half inches high.    His hat was gone and was found by the side of the track, about one hundred feet north of the bridge.    There was a wound on his forehead, on the left side, over the left eye, about three and one half inches long, which appeared to have been made by striking something pretty hard.    The speed of the train was from twelve to fifteen miles an hour.    At the close of the evidence a motion that a verdict be ordered for the defendants was denied, and they excepted.    Verdict for the plaintiff.

*Burnham, Brown & Warren* and *Drury & Peaslee,* for the plaintiff.

*Charles H. Burns* and *Frank S. Streeter,* for the defendants.

PARSONS, J.    The plaintiff's intestate, while employed as a freight brakeman by the defendants, was killed by collision with an overhead bridge.    It is not contended that the danger from the bridge was unknown to or not assumed by the deceased. The claim is that the telltale or guard protecting the bridge was defective and insufficient, and that upon the evidence the danger presented by the low bridge and defective guard combined might be found by the jury to be unknown to him and not ascertainable by ordinary care.    *Hardy* v. *Railroad,* 68 N. H. 523.

Underlying the question of Larivee's knowledge, upon which the plaintiff claims, under *Hardy* v. *Railroad,* that the case was properly submitted to the jury, is the preliminary question whether a defect in the guard occasioned the injury; for unless it is established that the defective guard caused the injury, Larivee's knowledge or want of knowledge of such defect is immaterial.    The denial of the defendants' motion that a verdict be ordered for them cannot be sustained unless evidence was presented upon which the jury could properly and reasonably come to two conclusions, (1) that the bridge guard was defective, and (2) that Larivee's injury resulted from the defective guard without fault on his part.

The first claim is that the guard was defective because the wires extended only three inches below the level of the bridge.

The office of the bridge guard, as we said in *Hardy* v. *Railroad*, *supra*, was to notify the "trainmen, by the senses of sight and feeling, that they were about to pass a bridge which would hit them unless they changed their position. . . . To accomplish the object in view, the guard should be some device that will hit some portion of the body when the head is above the plane of the under surface of the bridge, not for the purpose of furnishing a gauge by which to adjust the position of the body, but for the purpose of calling attention to the proximity of danger in and above that plane." In that case the guard wires did not extend within six inches as low as the timbers of the bridge by which Hardy was injured. This fact furnished evidence competent for the consideration of the jury upon the question of the sufficiency of the guard. For, as was said in the opinion, "the jury might find that the lower ends of the wires should be as low, at least, as the level of the under surface of the bridge timbers, so that they would give warning whenever any portion of the body was above that level." It may be that a jury might also find that in order to constitute a sufficient guard the wires should extend sufficiently below the danger line to give by their impact with the body substantial warning of the approaching danger. But no reason arising from ordinary experience and knowledge such as the jury would possess is suggested to us why they should extend farther, or why a drop of three inches, as in this case, is not amply sufficient. There was no evidence and there is no suggestion of any useful purpose to be subserved by requiring warning of a non-existing danger, nor why the brakeman should be interrupted in his work, or possibly forced into other peril by an attempt to obey a useless warning and to avoid a danger which did not threaten him. It is manifest that the blow from a suspended wire upon the face or person of a brakeman striking it at the speed of eighteen miles an hour ought not to be inflicted without cause.

It is suggested that probably Larivee stooped as he was passing under the guard and so was not notified. If, passing under the wires, he received no notice, and was injured by placing himself within the plane of danger between the guard and the bridge, this was something which might happen whatever the drop of the guard wires, and was a risk incident to the service. *Hardy* v. *Railroad*, *supra*, *p.* 537. It is also claimed that the guard was insufficient because the wires were too far apart. From the arm, in a space of ninety-eight inches, were suspended thirteen wires, from one eighth to one quarter of an inch in diameter, *supposed* to be equal distances apart, making, if the supposition were correct, the distance between the centers of the wires eight and one sixth inches, and the actual space between the wires one eighth to one quarter of an inch less, or a fraction under

eight inches. Larivee was wearing a stiff hat which was found beside the track about one hundred feet north of the bridge. The hat was produced before the jury, and is said to have measured less than eight and one half inches. Upon the facts stated in the reserved case, it is clear that Larivee could not have passed the guard with any portion of his person within the zone of danger, without warning from the guard. His hat, measuring over eight inches, could not have passed through the less than eight-inch space between the wires without being struck by them. Our attention has been called to the testimony of a witness, as shown by the stenographer's notes, in substance that some of the wires were bent slightly, while some were straight; and that the bending of the wires affected the spaces between them somewhere from half an inch to an inch about the middle of the track. It appeared that the train had slowed up at Hooksett, three miles below the bridge, to take on some workmen, and that Larivee was then seen attending to his duty and standing upon a car about thirty-one cars back from the engine. After leaving Hooksett he had sometimes come forward to the engine. When the train reached Concord, Larivee was found dead, lying on his back with his head toward the south, on and lengthwise of the running board of a car, seven to ten cars back from the engine. There was a cut on the left side of his forehead a little above the left eye.

Upon this evidence, it is suggested on the part of the plaintiff that the jury might infer that Larivee was walking forward toward the engine; that there was a nine-inch space between two of the guard wires about the middle of the track; that Larivee stooped as he walked, so that the guard wires did not strike his shoulders; that he was in such a position that his hat passed through the guard wires and he was not notified by them in any way of the approaching bridge, and in consequence received the injury by reason of the defendants' negligent construction of the guard. This is the merest conjecture.

The plaintiff's case is fatally defective in one respect equally important and as necessary for him to establish by evidence as the defendants' negligence and his own due care. The law does not transfer the burden of an injury from the suffering party to another by compelling the payment of damages, without proof of a cause for such action. Legal ground for the law's intervention involves the plaintiff's innocence of fault and the defendant's guilt; but the mere proof of negligence in the defendant does not compel him to recompense an injury unless the injury resulted from such negligence. It is elementary that no action can be maintained upon an act of negligence unless the breach of duty has been the cause of the damage. The defendant's guilt of negligence preceding an accident does not make

him liable for the injury resulting from the accident unless such injury was occasioned by the negligence of which the defendant was guilty. The connection of cause and effect must be established. 1 Shearm. & Red. Neg. (4th ed.), s. 25; Black Acc. Cas. 3; *Lester* v. *Pittsford*, 7 Vt. 158; *State* v. *Railroad*, 52 N. H. 528; *Hall* v. *Brown*, 54 N. H. 495; *Edgerly* v. *Railroad*, 67 N. H. 312. Whether the defendant's negligence was the proximate cause of the plaintiff's injury is in general a question of fact for the jury. *Boothby* v. *Railroad*, 66 N. H. 342; *Gilman* v. *Noyes*, 57 N. H. 627; *Stark* v. *Lancaster*, 57 N. H. 88; *Milwaukee, etc., Co.* v. *Kellogg*, 94 U. S. 469, 474. If there is any substantial evidence, the jury are to decide upon the balance of probabilities. They are to determine what amount or weight of competent evidence is sufficient or insufficient to convince their minds and determine the dispute between the parties. *Felch* v. *Railroad*, 66 N. H. 318, 323; *Fuller* v. *Rounceville*, 29 N. H. 554, 563, 564. But this does not authorize the jury to determine the question without evidence. If there be no substantial evidence,— if upon all the evidence it is clear that reasonable men cannot differ in the conclusion that the question is undetermined by the evidence, then the finding must be against the party sustaining the burden of proof.

In the present case, there is no evidence connecting the negligence charged against the defendants with the death of Larivee. The relation of cause and effect is wanting. That his death was caused by contact with the bridge was not in controversy. It may be the guard performed its duty and notified him of the approaching bridge, and he was injured because, not making sufficient allowance for the extra height of the car upon which he was riding, the stooping posture which the wound upon his head shows he occupied when hit was too erect for safety. It may be that he passed under the guard and received his injury from a slight change in position between the guard and the bridge. It is perhaps possible, though highly improbable, that he passed the wires in the manner claimed and received no warning either from the sense of sight or touch, and hence was injured. That Larivee's head and hat should pass through a space so near its size between the hanging wires, at a speed of fifteen to eighteen miles an hour, without his attention in some way being attracted by the wires which, it must be assumed, he was relying upon to warn him of the bridge and consequently was expecting, at a time when he was engaged upon no duty which occupied his attention, would not seem to be a " natural and probable consequence of the situation as proved." *Gilman* v. *Noyes*, 57 N. H. 627, 629–631.

But the plaintiff cannot recover without proof that the accident happened in this manner. There was no direct evidence

tending to make it more probable that the accident happened as the plaintiff claims. So far as the issues of Larivee's due care and the defendants' responsibility for the injury, upon which the burden was with him, the plaintiff depended solely upon circumstantial evidence. "It is not enough to show that the defendant was negligent and that the plaintiff was free from negligence, but it is also necessary to show that the negligence of the defendant caused the injury for which recovery is sought. The negligence must be connected with the injury by natural and uninterrupted sequence, as cause is connected with effect. While direct evidence is not essential, the circumstances must be such as to fairly permit the inference that the negligent condition or act contributed so proximately to the injury that without its agency the accident would not have happened." *Fitzgerald* v. *Railroad*, 154 N. Y. 263, 266. "The law of evidence requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on groundless inferences. *United States* v. *Ross*, 92 U. S. 281, 283, 284; Best Ev. (Chamberlayne's), *s.* 90. Starkie lays down the rule thus: 'In the first place, as the very foundation of indirect evidence is the establishment of one or more facts from which the inference is sought to be made, the law requires that the latter should be established by direct evidence, as if they were the very facts in issue.' Stark Ev. 80." *Cole* v. *Boardman*, 63 N. H. 580, 581. "We do not question that a jury may be allowed to presume the existence of a fact in some cases from the existence of other facts which have been proved. But the presumed fact must have an immediate connection with or relation to the established fact from which it is inferred. . . . A presumption which a jury may make is not a circumstance in proof, and it is not, therefore, a legitimate foundation for a presumption." *Manning* v. *Insurance Co.*, 100 U. S. 693, 697, 698. "When the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which the defendant is responsible and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must fail also if it is just as probable that they were caused by the one as the other, as the plaintiff is bound to make out his case by the preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the damage was caused by the negligence and unskillfulness of the defendant is not sufficient." *Searles* v. *Railway*, 101 N. Y. 661, 662; *Taylor* v. *Yonkers*, 105 N. Y. 202, 209; *Hunter* v. *Railroad*, 116 N. Y. 615, 624.

Applying these rules to the facts before us, it is clear there is not in the case proof upon which a finding for the plaintiff could

with reason be made. The fundamental fact of the claimed defect in the guard is not proved, but is left to inference. A bending of the wires affecting the spaces between them would decrease one space as much as it would increase the adjoining space. Whether exactly over the middle of the track there was a space or a wire is unknown, though it is clear that if the space upon the arm occupied by the wires extended equally upon each side of the track, the center wire of the thirteen would be over the center of the running board where Larivee was found. Upon the most favorable view of the evidence for the plaintiff, the case is that about the middle of the track there was a space between the guard wires through which Larivee's hat might possibly have slipped and one through which it could not by any possibility have passed without being struck. Upon this evidence, assuming that Larivee was upon the running board, it is equally probable that it was impossible for him to pass the guard with any portion of his person within three inches of the plane of danger without receiving warning, as it is possible that he could pass without such warning. There is no open, visible connection between the injury and the negligence alleged. The whole case rests upon the injury received; and as such injury may have resulted in spite of the warning of the guard, or from a risk incident to the service, whether the guard were sufficient or otherwise, the mere fact of injury does not establish the defendants' responsibility therefor. The facts proved are equally consistent with a theory of the accident which would discharge the defendants as with one that would charge them; and in the absence of some evidence as to the fact, a judicial trial does not substitute an unfounded guess or conjecture for the legal proof which the law requires. *Murphy* v. *Railroad*, 167 Mass. 64; *Dewhirst* v. *Railroad*, 167 Mass. 402; *Kenneson* v. *Company*, 168 Mass. 1; *Corcoran* v. *Railroad*, 133 Mass. 507, 509. It is suggested that the jury might infer Larivee's exercise of due care from the instinct of self-preservation. *Huntress* v. *Railroad*, 66 N. H. 185; *Lyman* v. *Railroad*, 66 N. H. 200. If such inference were made, the jury would not be authorized to infer from Larivee's exercise of due care so presumed that the defendants' negligence occasioned the injury. *Douglass* v. *Mitchell*, 35 Pa. St. 440; authorities, *supra*.

The case is clearly distinguishable from *Hardy* v. *Railroad*, 68 N. H. 523, which has been referred to and is relied upon to sustain the plaintiff's position. In that case none of the guard wires came within six inches as low as the bridge timbers. This fact was clearly established. There was evidence from an eye-witness tending to show with some certainty that Hardy climbed upon the car before passing the guard; and it was certain that if in passing the guard he occupied the same position as when

he struck the bridge, the guard, from its defective construction, would have given him no notice. So far as the accident itself was in controversy, the main question of fact in dispute was whether Hardy got on to the car before or after passing the guard; and while it was said that "the evidence bearing upon it is not so positive and convincing as to remove all doubt," the conclusion was that fair-minded men might come to different conclusions in regard to it. In the present case, it is clear that fair-minded men cannot with reason conclude that a bare possibility is established as a fact by evidence tending equally to support different conclusions of equal, if not greater, inherent probability.

*Verdict set aside : judgment for the defendants.*

CLARK, J., did not sit : the others concurred.