Coös,
Dec. 6, 1910.

LAVALLEE, *Adm'r, v.* BURGESS SULPHITE FIBRE CO.

In an action of negligence against employers, certain evidence deemed sufficient to warrant a finding that the injuries complained of resulted from a concealed danger as to which the servant was not informed and the risk of which he did not assume.

CASE, for negligence. At the close of the plaintiff's evidence, the defendants moved for a nonsuit. The court deemed it expedient to submit the case to the jury and denied the motion *pro forma*, stating that it would be considered on its merits if the verdict should be for the plaintiff. The jury having returned a verdict for the plaintiff, the court ordered it set aside because of a lack of evidence and as a matter of law, and directed a verdict for the defendants, and the plaintiff excepted. Transferred from the December term, 1908, of the superior court by *Pike*, J.

*Edmund Sullivan* and *Herbert I. Goss* (*Mr. Sullivan* orally), for the plaintiff.

*Merrill & Merrill* (of Maine), *Drew, Jordan, Shurtleff & Morris,* and *Daniel J. Daley* (*Edward N. Merrill* orally), for the defendants.

BINGHAM, J. The plaintiff's intestate was fatally injured while in the defendants' employment. No one was present at the time of the accident. The plaintiff claims that it was due to the deceased being struck in the head by a clamp on a belt which passed over the place where he was required to go in the performance of his duty. The defendants claim that the evidence fails to disclose any visible connection between the injury received and the belt as the cause of the accident, and that it is equally probable the deceased was struck by the bolts on the spokes of a

fly-wheel located within a few inches of an oil-cup, which it was the duty of the deceased to attend, as that he was struck by the belt; and that as between two equally probable causes of the injury, for one only of which the defendants are responsible, the jury cannot be permitted to guess. *Deschenes* v. *Railroad*, 69 N. H. 285. If the defendants' contention in relation to the evidence is incorrect, the verdict directed in their behalf must be set aside.

There was evidence to the effect that at the time the deceased was struck he stood facing the oil-pump and fly-wheel, at a distance of two and one half to three feet from the face of the pump; and that the oil-cup was located at the top of the pump, twenty-six inches above the floor and six inches back from the face of the pump, so that the deceased stood from three to three and a half feet from the oil-cup when he received his injury. The record does not state his height, other than that he was over five feet and a half tall and was a little taller than a witness whom the jury saw. Such being the state of the evidence on this branch of the case, we think it might reasonably be concluded that the deceased was not at work upon the oil-cup when he was struck; that he was so far away from it as to render it impracticable, if not impossible, for him to do so; and that his head was not struck by the fly-wheel or the bolts upon it.

Was the injury received the natural and probable result of the negligence charged with reference to the belt? There was evidence that the blow received was so severe that the deceased fell where he stood and did not move from where he fell; that he fell diagonally toward the engine and lay upon his left side, with his head upon the drip-pipes at the foot of the platform to the engine and four or five feet from the oil-pump; and that his feet were from two and one half to three feet from the pump and about two feet under the large belt. This was the belt that passed over the place where the deceased stood when struck. It came up through the floor back of where he stood, and ran in an upward course over the fly-wheel and at an angle of about thirty degrees with the floor. There was no danger from the belt to one standing where the deceased did when it ran evenly, for then it was a sufficiently safe distance away; but when the load on the engines operating the pulleys upon which the belt ran was changed, either by increasing or diminishing the load, the belt would sag toward the lower end and, going at the rate of three fifths of a mile a minute, would strike the iron rim of the fly-wheel with such force as to break the nuts on the bolts of the clamps connecting the ends of the belt. There were several of these clamps, each weighing from a pound and a half to two pounds. It was dangerous for a person to stand where the deceased did when the load was changed and the belt sagged.

It then had a motion sideways as well as up and down, which would continue for a short time and until the engines became adjusted to the changed load. When the deceased was found he had a V-shaped gash in the scalp about two inches long, located on the right side and near the top of his head and extending toward his forehead. His skull was crushed at the point of the wound, causing pressure upon the brain and rendering him unconscious. There was nothing above the deceased that could fall upon and injure him.

When all the evidence is considered, and especially that disclosing the nature of the wound, its position on the head, the severity of the blow, the position in which the deceased stood when he fell, that he did not move after he fell, the liability of the load to be changed causing the belt to sag, the danger to be encountered where he stood in case the load was changed causing the belt to sag, and the absence of any other condition or force capable of inflicting a blow of like severity, it seems that fair-minded men might reasonably conclude that the belt sagged and inflicted the injury complained of; and as there was evidence that the deceased had never seen the belt sag and was not informed by the defendants that such a condition was likely to occur, they might also conclude that he was free from fault and did not assume the risk. The plaintiff's exception is sustained, and the verdict for the defendants is set aside.

*Judgment for the plaintiff.*

All concurred.